**Janet SPANN, as Next Friend for Jason Burrow SPANN, a Minor, Plaintiffs–Appellees,**

v.

**TYLER INDEPENDENT SCHOOL DISTRICT, Defendant–Appellant.**

No. 88–2871.

United States Court of Appeals, Fifth Circuit.

June 29, 1989.

John C. Hardy, Amy B. Drott, Hardy & Atherton, Tyler, Tex., for defendant-appellant.

T.J. Baynham, Jr., Bill Frizzell, Tyler, Tex., for plaintiffs-appellees.

Before BROWN, WILLIAMS and JOLLY, Circuit Judges.

E. GRADY JOLLY, Circuit Judge:

Janet Spann, as next friend of Jason Burrow Spann, brought this section 1983 suit against the Tyler, Texas, Independent School District for the sexual abuse suffered by Jason from a school bus driver, Dalton Glen Jones. Holding that the abuses did not occur as a result of any officially sanctioned policy of the school district, we reverse.

I

This case is a section 1983 case brought by the next friend of a minor who, at the time the alleged constitutional tort first occurred, was a six-year-old, first-grade, special-education pupil at an elementary school in the Tyler, Texas, Independent School District ("TISD"). The boy regular-

ly rode to school in a bus driven by Jones. While acting in his capacity as a school employee, as well as on at least one occasion during the summer, Jones abused the boy sexually. Although, after the first incident, it was reported to Rhodes, the principal, that Jones was suspected of abusing Jason, the jury apparently found that Rhodes did not properly investigate the matter. In any event, there were subsequent incidents of abuse. When the boy's mother discovered what had happened, she filed this section 1983 suit against both Jones and TISD on June 24, 1986. On July 15, 1986, TISD filed a motion to dismiss. A motion for severance was filed on March 31, 1988, requesting that the action against Jones, who had not answered in this case and was therefore in default, be severed from the case against TISD. An order was entered on April 28, 1988, granting the plaintiff's motion for severance, and another order was entered granting an interlocutory judgment against Jones since he had failed to appear or defend. The case against TISD was tried to a jury on March 23, 24 and 25, 1988. At the end of Spann's case-in-chief, TISD moved for a directed verdict on insufficiency of the evidence. After hearing argument of counsel, the court denied the motion. On March 25, 1988, the jury, answering interrogatories propounded by the court, returned its verdict. On May 3, 1988, the court entered its judgment in favor of the plaintiff. On May 13, 1988, TISD filed its motion for j.n.o.v. or new trial, and on August 29, 1988, the court entered an order denying TISD's May 13 motion. TISD then filed a timely notice of appeal.

## II

We will assume, *arguendo*, that Jones was acting under color of state law when he sexually abused Jason Spann, that Jason had a constitutional right to be protected from such conduct, and that Jason's school principal failed to investigate adequately the reports of Jones' conduct. We can thus narrow the issue in this case to whether Jason's injury resulted from acts committed pursuant to a policy of TISD, as required for section 1983 recovery against a municipality under *Monell v. New York City Dept. of Social Services*, 436 U.S. 658, 694, 98 S.Ct. 2018, 2037, 56 L.Ed.2d 611 (1978).

In *Pembaur v. Cincinnati*, 475 U.S. 469, 480, 106 S.Ct. 1292, 1298, 89 L.Ed.2d 452 (1986), the Supreme Court held that municipalities may be held liable under section 1983 only for acts for which the municipality is actually responsible, "that is, acts which the municipality has officially sanctioned or ordered." Spann, of course, does not suggest that Jones acted pursuant to TISD policy when he abused Jason; Spann argues, however, that the continued abuse of Jason occurred because of the TISD policy of delegating to the school principal the complete discretion whether to investigate reports of sexual abuse and determine their validity. This policy, it is argued, is responsible for the continuation of the constitutional violations because the principal did not investigate the first, or any, allegations against Jones. Such an investigation, Spann contends, would have resulted in reporting the incident to the proper authorities and would have prevented the repeated abuse of Jason.

We cannot agree that TISD is liable under the theory. According to the Supreme Court,

[t]he language of section 1983, read against the background of the ... legislative history, compels the conclusion that Congress did not intend municipalities to be held liable unless action pursuant to official municipal policy of some nature *caused* a constitutional tort. In particular ... a municipality cannot be held liable *solely* because it employs a tortfeasor—or, in other words, a municipality cannot be held liable under section 1983 on a *respondent superior* theory.

*Monell*, 436 U.S. at 691, 98 S.Ct. at 2036 (emphasis supplied). The repetition of Jason's injury was not caused by school board policy: the school board had a perfectly reasonable policy for dealing with reported instances of sexual abuse. Instead the injury was caused by the failure of an employee properly to exercise the discretion granted him by the policy of

TISD. To hold TISD liable for the omissions of the principal would fly in the face of *Monell*'s explicit holding that the school board cannot be held liable for the acts of its employees on the basis of *respondeat superior.* "If the mere exercise of discretion by an employee could give rise to a constitutional violation, the result would be indistinguishable from *respondeat superior." City of St. Louis v. Praprotnik*, 485 U.S. 112, 108 S.Ct. 915, 925, 99 L.Ed.2d 107 (1988). TISD did not officially sanction or order the error in judgment of the school principal, and thus we reject the notion that TISD is liable for the unfortunate injury to Jason Spann. The judgment of the district court is therefore

REVERSED.

JOHN R. BROWN, Circuit Judge, dissenting:

Agreeing *arguendo* with all the various and sundry assumptions made *arguendo* in the Court's opinion, I disagree with my brothers' complete reversal of the judgment entered on the jury verdict on the stated ground that "[t]o hold TISD liable for the omissions of the principal would fly in the face of *Monell*'s explicit holding that the school board cannot be held liable for the acts of its employees on the basis of *respondeat superior.*" At 439.

The "official policy," [1] as defined in the Court's opinion, is TISD's delegation to school principals of the investigation and action thereon of allegations or reports of sexual abuse of school students to determine their validity and take appropriate action. The Court holds, however, that such policy did not cause Jason's injury. Indeed "the school board had a perfectly reasonable policy for dealing with reported instances of sexual abuse." *Id.* at 438. The Court then concludes that Jason's injury "was caused by the failure of an em-

ployee [the school principal] properly to exercise the discretion granted him by the policy of TISD." *Id.* at 438. This leads to my principal difference. If the policy commits everything to a subordinate then the actions of that subordinate, no matter whether conducted prudently or imprudently, become, *are* the actions of the entity adopting such policy. And if that delegatee of complete power negligently carries out its function, that is not a case of *respondeat superior.* It is, in the analogy to tort law, the act of the principal.

As stated most favorably to the Court's position, the "official policy" was that the school principal is invested with the full power to investigate and determine the validity of reports of sexual abuse and take appropriate action. The Court's opinion, presumably relying on Principal Rhodes' declaration that he had unbridled discretion to decide whether an accusation of sexual abuse had merit before reporting it to D.H.S., is consistent with this reading.

I agree with the Court's assessment that the jury, if responding to a properly submitted inquiry, would have found this to be the correct statement of TISD's policy. But I swim out of the mainstream and into the turbulent rapids when the opinion implicitly determines that the jury did not, could not, have found Rhodes served as a "final" policymaker to thus trigger *Monell* municipal liability without depending on *respondeat superior.*

Here we are faced with the dreaded delegation dilemma: the instance where a municipal policymaker (the school board) delegates policymaking authority to another official (the principal). What is delegated is more than simple authority to investigate and determine the veracity of reports of sexual abuse of students. Rather it is the authority to set the TISD policy as to (i) the

---

1. "Official policy," a term foreign to the express statutory language of 42 U.S.C. § 1983, "often refers to formal rules or understandings—often but not always committed to writing—that are intended to, and do, establish fixed plans of action to be followed under similar circumstances consistently over time." *Pembaur*, 475 U.S. at 480–81, 106 S.Ct. at 1298–99, 89 L.Ed.2d at 463. The requirement that the tortious con-

duct in a § 1983 action occur pursuant to an "official policy" "was intended to distinguish acts of the *municipality* from acts of *employees* of the municipality, and thereby make clear that municipal liability is limited to action for which the municipality is actually responsible." *Id.* at 479, 106 S.Ct. at 1298, 89 L.Ed.2d at 463 (footnote omitted).

method used in those investigations, (ii) determining the amount of evidence required to support a "reportable" (to D.H.S.) accusation of sexual abuse and (iii) determining whether there is a basis for the contention of sexual abuse as well as the appropriate action to be taken.

With respect to the problem of identifying final policymakers, the Supreme Court in *Pembaur* cautions "[t]he fact that a particular official—even a policymaking official—has discretion in the exercise of particular functions does not, without more, give rise to municipal liability based on an exercise of that discretion. The official must also be responsible for establishing final government policy respecting such activity before the municipality can be held liable." 475 U.S. at 481–83, 106 S.Ct. at 1299–1300, 89 L.Ed.2d at 464–65 (citation omitted) (footnotes omitted). Though criticized for "[a]ttempting to place a gloss on *Pembaur*'s finality requirement,"[2] a plurality of the Court in *City of St. Louis v. Praprotnik*, 485 U.S. 112, ——, 108 S.Ct. 915, 926, 99 L.Ed.2d 107, 120 (1988) explained final policymaker *a la Pembaur* as follows:

> [w]hen an official's discretionary decisions are constrained by policies not of that official's making, those policies, rather than the subordinate's departures from them, are the act of the municipality. Similarly, when a subordinate's decision is subject to review by the municipality's authorized policymakers, they have retained the authority to measure the official's conduct for conformance with *their* policies. If the authorized policymakers approve a subordinate's decision and the basis for it, their ratification would be chargeable to the municipality because their decision is final.

Tacking back to Principal Rhodes, we have an official charged first with the responsibility of making all investigations of suspected/reported sexual molestation, assessing their results and taking action (which could include a report to D.H.S). This delegatee was constrained by no school board policy governing how the investigations were to be made concerning reports that students had been sexually abused. Nor were the results of the Principal's investigations either reviewed, or subject to review, by the school board or any other supervisory agency to see if the procedure utilized or result garnered conformed with their policies. Principal Rhodes was responsible for establishing final policy covering the investigation of sexual abuse reports.

I recognize that the Supreme Court instructs us to look to state law to determine if an official is invested with the power to act as a final policymaker. *Pembaur*, 475 U.S. at 483, 106 S.Ct. at 1300, 89 L.Ed.2d at 465; *Praprotnik*, 485 U.S. at ——, 108 S.Ct. at 924, 99 L.Ed.2d at 118. TISD contends that since the School Board of Trustees is granted "exclusive power to manage and govern the public free schools of the district," Tex.Educ.Code Ann. § 23.26(b), these powers are not delegable.[3] I have difficulty accepting the notion that this general grant of power speaks to delegation of policymaking authority. Indeed, TISD's interpretation has yet to be considered by the Texas Supreme Court. Until the governmental body's exercise of delegation is authoritatively challenged by a superior Texas body, a federal court can, for § 1983 purposes, accept as valid delegation of these wide, autonomous powers and ultimate responsibility to the Principal.[4]

---

2. 485 U.S. at ——, 108 S.Ct. at 935, 99 L.Ed.2d at 131 (Brennan, J. concurring).

3. TISD neglects to consider that protection of children from child abuse is a strong state policy not exclusively committed to one entity. Tex.Fam.Code Ann. §§ 34.01, .02 and 34.07.

4. Considering my general enthusiasm for certification to the highest Court of a state, perhaps some would goad me to suggest certifying this unsettled matter of state law to the Texas Supreme Court, even though in this instance, that

might cut against the Congressional purpose of § 1983 to provide federal protection from state and local governmental deprivations of federal constitutional rights. At the same time, one should be similarly queasy in the light of Justice O'Connor's pronouncement that "a federal court would not be justified in assuming that municipal policymaking authority lies somewhere other than where the applicable [state] law purports to put it. And certainly there can be no justification for giving a jury the discretion to determine which officials are high enough in

Section 1983 intends for federal courts and juries look at reality, at actual practice, not at paper tigers.

The Court says that to impose liability in the instant case requires improper resort to *respondeat superior.* But here this conduct is by a person to whom complete authority has been endowed by the policy-making authority. Whether in the light of the actual jury charge or interrogatories [5] this was sufficiently presented, and whether on such a hypothesis something other than a simple reversal is appropriate are questions I do not reach.

Whatever such deficiencies, a complete reversal and rendition runs counter to accepted § 1983 standards. I therefore must dissent.

the government that their actions can be said to represent a decision of the government itself." *Praprotnik,* 485 U.S. at ——, 108 S.Ct. at 925, 99 L.Ed.2d at 120.

**5.** Interrogatory No. 2 in effect asked whether Principal Rhodes failed to investigate allegations and whether that failure proximately caused injury to the molested student.