Revised September 17, 1998

IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

_____

No. 97-10343

_____

DOE, on behalf of John Doe, on behalf of Jack Doe, on behalf of James Doe; ET AL,

                              Plaintiffs,

JOHN DOE; JOE DOE; ROE, as next friend of Jack Roe; SMITH, as next friend of James Smith,

                              Plaintiffs-Appellants,

        v.

DALLAS INDEPENDENT SCHOOL DISTRICT; ET AL,

                              Defendants,

DALLAS INDEPENDENT SCHOOL DISTRICT; BARBARA PATRICK,

                              Defendants-Appellees.

-------------------------------------------------------------------

BOB BLACK; ET AL,

                              Plaintiffs,

        v.

DALLAS INDEPENDENT SCHOOL DISTRICT; ET AL,

                              Defendants,

DALLAS INDEPENDENT SCHOOL DISTRICT; BARBARA PATRICK,

                              Defendants-Appellees.

_____

August 27, 1998

Before REYNALDO G. GARZA, KING, and BENAVIDES, Circuit Judges.

KING, Circuit Judge:

Plaintiffs-appellants appeal the district court's grant of summary judgment in favor of defendants-appellees on their claims brought under 42 U.S.C. § 1983. Additionally, plaintiffs-appellants appeal the district court's dismissal of their claim brought under Title IX of the Education Amendments of 1972, 20 U.S.C. § 1681, for failure to state a claim upon which relief could be granted. For the reasons set forth below, we affirm the district court's grant of summary judgment for defendants-appellees on the § 1983 claims, reverse its dismissal of the Title IX claim, and remand the case to the district court for further proceedings consistent with this opinion.

## I.   FACTUAL & PROCEDURAL BACKGROUND

From 1983 to 1987, John McGrew, a third-grade teacher and Boy Scout Troop leader at Joseph J. Rhoads Elementary School, sexually molested numerous male students. McGrew was subsequently convicted in state court of one count of aggravated sexual assault and two counts of indecency with a child. Following his conviction, McGrew was sentenced to one life sentence and two twenty-year sentences.

This case was initially filed in state court on August 20, 1993 by or on behalf of John Doe, Joe Doe, Jack Doe, and James Doe.[1]  On September 22, 1993, the action was removed to federal district court.  The original suit alleged claims against numerous defendants[2] based on McGrew's abuse of the boys pursuant to (1) 42 U.S.C. § 1983, (2) Title IX of the Education Amendments of 1972, 20 U.S.C. § 1681 (Title IX), (3) the Texas Constitution, and (4) Texas tort law.  On March 29, 1995, the district court dismissed the Title IX claim because it concluded, based on Fifth Circuit precedent under Title VII which has since been overruled by the Supreme Court, that same-sex sexual harassment was not actionable under Title IX.  In addition, the district court dismissed the Texas common-law tort claims, finding that "[t]he plaintiffs [had] not alleged [that] any of the moving defendants committed common law torts."  A suit based on the same facts was subsequently filed by or on behalf of plaintiffs-appellants Bob Black, Bill Black, William White, and George Green, and on February 20, 1996, the two actions were consolidated.[3]

---

[1]     For purposes of filing the lawsuit, the names of the victims were changed to protect their identities.  However, the boys' actual initials were used to identify them in depositions and affidavits.

[2]     Several of the defendants have since been dismissed from the case.  As their dismissals have not been appealed, they are not relevant to our discussion.

[3]     Hereinafter, we refer to the plaintiffs from both suits collectively as "Plaintiffs."

Plaintiffs argued to the district court that defendants-appellees Dallas Independent School District (DISD) and Principal Barbara Patrick (collectively, Defendants) knew or should have known of McGrew's sexual abuse as early as the 1983-1984 school year and that, despite having such knowledge, they acted with deliberate indifference toward Plaintiffs' rights, taking no action to stop the abuse.  Defendants filed a motion for summary judgment on Plaintiffs' § 1983 claims on the grounds that (1) no basis existed for holding DISD liable for the conduct of McGrew and (2) Patrick was entitled to qualified immunity.  The district court granted Defendants' motion on October 29, 1996, and it entered final judgment for Defendants on March 6, 1997.  Plaintiffs thereafter timely appealed to this court.

## II.  STANDARD OF REVIEW

We review a grant of summary judgment de novo, applying the same criteria used by the district court in the first instance. See Kemp v. G.D. Searle & Co., 103 F.3d 405, 407 (5th Cir. 1997). After consulting applicable law in order to ascertain the material factual issues, we consider the evidence bearing on those issues, viewing the facts and the inferences to be drawn therefrom in the light most favorable to the nonmovant.  See King v. Chide, 974 F.2d 653, 656 (5th Cir. 1992).  Summary judgment is appropriate only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the

4

affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  FED. R. CIV. P. 56(c).  However, "[t]he mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient [to preclude summary judgment]; there must be evidence on which the jury could reasonably find for the plaintiff."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986).

We also review de novo a dismissal for failure to state a claim upon which relief could be granted.  See Norman v. Apache Corp., 19 F.3d 1017, 1021 (5th Cir. 1994).  A case or a portion thereof may not be dismissed for failure to state a claim unless it appears certain that the plaintiffs cannot prove any set of facts in support of their claim that would entitle them to relief.  See Carney v. RTC, 19 F.3d 950, 954 (5th Cir. 1994).

### III.  DISCUSSION

Plaintiffs raise several issues on appeal.  First, they contend that the district court erred in granting summary judgment in favor of DISD on their § 1983 claim against it. Second, they argue that Patrick is not entitled to qualified immunity.  Third, Plaintiffs assert that the Supreme Court's decision in Oncale v. Sundowner Offshore Services, Inc., 118 S. Ct. 998 (1998), renders the district court's dismissal of their

5

Title IX claim erroneous.  We address each of these arguments in turn.

## A.  42 U.S.C. § 1983

Section 1983 provides injured plaintiffs with a cause of action when they have been deprived of federal rights under color of state law.  The statute states,

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

42 U.S.C. § 1983.  In order to state a valid claim under § 1983, Plaintiffs must "(1) allege a violation of rights secured by the Constitution or laws of the United States and (2) demonstrate that the alleged deprivation was committed by a person [or entity] acting under color of state law." Leffall v. Dallas Indep. Sch. Dist., 28 F.3d 521, 525 (5th Cir. 1994) (citing West v. Atkins, 487 U.S. 42, 48 (1988)).  Plaintiffs contend that they presented sufficient summary judgment evidence to create a genuine issue of material fact as to whether DISD and Patrick, acting under color of state law, violated their constitutional rights by failing to protect them from abuse at the hands of McGrew.

### 1.  DISD

6

Under § 1983, a municipality or local governmental entity such as an independent school district may be held liable only for acts for which it is actually responsible. See Pembaur v. City of Cincinnati, 475 U.S. 469, 480 (1986); Spann v. Tyler Indep. Sch. Dist., 876 F.2d 437, 438 (5th Cir. 1989). Thus, "a municipality cannot be held liable solely because it employs a tortfeasor--or, in other words, a municipality cannot be held liable under § 1983 on a respondeat superior theory." Monell v. Dep't of Social Servs. of New York, 436 U.S. 658, 691 (1978); see also 1B MARTIN A. SCHWARTZ & JOHN E. KIRKLIN, SECTION 1983 LITIGATION: CLAIMS AND DEFENSES § 7.5 (3d ed. 1997). However, a municipality may be held liable under § 1983 when "execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury." Monell, 436 U.S. at 694; see also 1B SCHWARTZ & KIRKLIN, supra, § 7.5 ("A municipality is liable for its own wrongs when enforcement of a municipal policy or practice results in a deprivation of federally protected rights."). "Thus, § 1983 municipal liability may be imposed when (1) the enforcement of a municipal policy or custom was (2) 'the moving force' of the violation of federally protected rights." 1B SCHWARTZ & KIRKLIN, supra, § 7.6 (quoting City of Canton v. Harris, 489 U.S. 378, 385-91 (1989)).

Plaintiffs rely on two distinct rationales in support of their claim that DISD is liable to them under § 1983. First,

7

they argue that DISD is liable for Patrick's deliberate indifference to their constitutional rights because it delegated to her policymaking authority over the school's response to allegations of sexual abuse. Second, Plaintiffs contend that DISD's failure to adopt a policy regarding what steps should be taken when a child alleges that he was a victim of sexual abuse at the hands of a school employee amounts to deliberate indifference on the part of DISD itself. DISD responds that Patrick was not a policymaker and that it therefore may not be held liable for her actions or inactions. In addition, it argues that it may not be held liable for the non-existence of a policy on sexual abuse.

The district court determined that, under Texas law, Patrick was not an official policymaker for DISD and that DISD's Board of Directors did not delegate any final policymaking authority to Patrick. Moreover, the district court held that DISD's failure to adopt a specific policy to protect against the sexual abuse of students did not cause the constitutional violations suffered by Plaintiffs. It therefore held that Plaintiffs failed to establish a genuine issue of material fact with respect to DISD's liability, and it granted summary judgment in favor of DISD.

Whether an official has policymaking authority is a question of state law. Jett v. Dallas Indep. Sch. Dist., 7 F.3d 1241, 1245 (5th Cir. 1993). In Jett, this court explained that under

8

Texas law, policymaking authority in an independent school

district rests with the board of trustees.

> Texas law is clear that final policymaking authority in
> an independent school district, such as the DISD, rests
> with the district's board of trustees.  Texas Education
> Code § 23.01 provides that "The public schools of an
> independent school district shall be under the control
> and management of a board of seven trustees."  The
> Education Code further provides that "[t]he trustees
> shall have the <u>exclusive</u> power to manage and govern the
> public free schools of the district," <u>id.</u> § 23.36(b)
> (emphasis added), and that "[t]he trustees may adopt
> such rules, regulations, and by-laws as they may deem
> proper."  <u>Id.</u> § 23.26(d). . . .  It is to be noted that
> the Education Code gives the board of trustees not only
> what might be described as a form of legislative power
> over the district they serve--the power to make "rules,
> regulations, and by-laws"--but also a form of executive
> power, the power to "control" and the "exclusive" power
> to "manage" as well as to "govern" the district.

<u>Id.</u> (footnote omitted and alterations in original except for

ellipsis).  Moreover, we have noted that, "although Texas law

provides that the principal is to exercise decision-making

authority in certain areas, even in those areas the principal

must follow the guidelines and policies established by the school

district."  <u>Eugene v. Alief Indep. Sch. Dist.</u>, 65 F.3d 1299, 1304

(5th Cir. 1995).

The Supreme Court has cautioned that "a federal court would

not be justified in assuming that municipal policymaking

authority lies somewhere other than where the applicable law

purports to put it."  <u>City of St. Louis v. Praprotnik</u>, 485 U.S.

112, 126 (1988).  Additionally, Supreme Court precedent indicates

that a body vested with policymaking authority cannot be found to

9

have delegated that authority to a subordinate official merely because it failed to investigate her discretionary actions.  See id. at 130.

Plaintiffs allege that because DISD had no formal policy for addressing allegations of sexual abuse, it delegated to principals, such as Patrick, the authority to make policy in that area.  Plaintiffs rely solely on the deposition testimony of Nell Lewis, DISD's former executive director for elementary education, to support this argument.  Lewis testified that DISD had no standard procedure for handling allegations of sexual abuse and that often a school's principal made the initial decision as to what actions to take in response to such an allegation.  Plaintiffs contend that this evidences DISD's delegation of policymaking authority to Patrick.  We disagree.  As the district court properly concluded, Lewis's testimony establishes only that principals were given the discretion to handle allegations of sexual abuse, not that they were delegated the broader authority to formulate official policy on the subject.

Plaintiffs next contend that DISD's failure to adopt an official policy should subject them to liability.  A school district's failure to adopt an official policy on a given subject may serve as the basis for § 1983 liability only when the omission "amount[s] to an intentional choice, not merely an unintentionally negligent oversight," and the Supreme Court has held that such an omission is equivalent to an intentional choice

10

only where the entity has acted with deliberate indifference. Rhyne v. Henderson County, 973 F.2d 386, 392 (5th Cir. 1992) (citing City of Canton, 489 U.S. at 390). "A failure to adopt a policy can be deliberately indifferent when it is obvious that the likely consequences of not adopting a policy will be a deprivation of constitutional rights." Id. (citing City of Canton, 489 U.S. at 390).

Plaintiffs point to no evidence suggesting that, at the time of the sexual abuse, the lack of an official policy on this issue was the result of an intentional choice on the part of the board of trustees. Moreover, in Spann v. Tyler Independent School District, we held that a school board's decision to vest school principals with complete discretion to address allegations of sexual abuse was a "perfectly reasonable policy for dealing with reported instances of sexual abuse."[4] 876 F.2d at 438. If an

---

[4] In Spann, the plaintiff alleged that the school district was liable for the sexual abuse that he suffered at the hands of a school bus driver because the principal failed to take action on Spann's earlier complaint regarding the abuse. See 876 F.2d at 437-38. The school district had a policy that delegated to the school principal "the complete discretion whether to investigate reports of sexual abuse and determine their validity." Id. at 438. This court held that

> [t]he repetition of Jason's injury was not caused by school board policy: the school board had a perfectly reasonable policy for dealing with reported instances of sexual abuse. Instead the injury was caused by the failure of [the principal] properly to exercise the discretion granted him by the policy of TISD. To hold TISD liable for the omissions of the principal would fly in the face of Monell's explicit holding that the school board cannot be held liable for the acts of its

11

explicit policy delegating the matter to principals was "perfectly reasonable," and thus did not constitute deliberate indifference on the part of the school district, then we cannot say that a custom tantamount to such a policy was not also reasonable.[5]  Thus, the district court was correct in granting summary judgment in favor of DISD.

## 2.  Principal Barbara Patrick

Plaintiffs next argue that Patrick is not entitled to qualified immunity for her actions or inactions because she had notice of McGrew's sexual abuse of Plaintiffs, she was deliberately indifferent to it, and her failure to take action caused Plaintiffs to suffer a constitutional injury.  Patrick claims that she is entitled to qualified immunity because she did not have notice of the possibility of McGrew's misconduct for the majority of the period at issue and, when made aware of the

---

> employees on the basis of respondeat superior. . . .
> TISD did not officially sanction or order the error in
> judgment of the school principal, and thus we reject
> the notion that TISD is liable for the unfortunate
> injury to Jason Spann.

Id. at 438–39.

[5]    The events leading to this lawsuit took place over ten years ago.  At oral argument, Defendants' counsel advised us that DISD has since adopted specific policies relating to claims of sexual abuse and harassment.

allegations, she did not respond in a manner that constituted deliberate indifference toward Plaintiffs' rights.[6]

The district court determined that a genuine issue of material fact existed as to whether and when Patrick became aware of allegations that McGrew was sexually abusing some of his students. Nevertheless, the district court concluded that no genuine issue of material fact existed as to whether Patrick acted with deliberate indifference because she did not ignore the information that she received. The district court therefore granted summary judgment in favor of Patrick, finding that she was entitled to qualified immunity.

We have formulated a three-part test for determining the personal liability of school officials in sexual abuse cases.

> A supervisory school official can be held personally liable for a subordinate's violation of an elementary or secondary school student's constitutional right to bodily integrity in physical sexual abuse cases if the plaintiff establishes that:
> (1)  the defendant learned of facts or a pattern of inappropriate sexual behavior by a subordinate pointing plainly toward the conclusion that the subordinate was sexually abusing the student; and
> (2)  the defendant demonstrated deliberate indifference toward the constitutional rights of the student by failing to take action that was obviously necessary to prevent or stop the abuse; and

_____

[6]     Patrick also relies on several other defenses in support of her claim that she was entitled to summary judgment on the issue of qualified immunity. Because we conclude that Patrick did not act with deliberate indifference toward Plaintiffs' constitutional rights, we need not address these arguments.

13

            (3)    such failure caused a constitutional injury
                   to the student.

Doe v. Taylor Indep. Sch. Dist., 15 F.3d 443, 454 (5th Cir. 1994)

(en banc).   Thus, in order to survive summary judgment,

Plaintiffs must put forth evidence sufficient to create a genuine

issue of material fact on each of these issues.

     Patrick first contends that Plaintiffs have failed to create

a genuine issue of material fact as to whether she had notice of

"facts or a pattern of inappropriate sexual behavior by a

subordinate pointing plainly toward the conclusion that the

subordinate was sexually abusing . . . student[s]."   Id.

Plaintiffs argue that Patrick was aware of McGrew's actions.   In

support of their claim, they offer the deposition testimony of

several children that McGrew molested, but the majority of the

victims testified that they either told no one about the abuse or

that they told only a teacher, a teacher's aide, or a parent.

They offered no evidence linking the information to Patrick.

Therefore, these depositions do not support the claim that

Patrick was aware of the abuse.[7]   However, in the Spring of 1986,

_____

        [7]     However, the evidence regarding two of the boys bears
brief discussion.   First, Plaintiff D.D.P. stated in a 1988
affidavit and in a 1996 deposition that McGrew had fondled him.
In the affidavit, he claimed that he "told Ms. Patrick . . .
about what happened."   In his deposition testimony, however, he
clarified his report of the incident, stating that he actually
told two women who worked in Patrick's office.   While he stated
that he thought Patrick probably could hear what he was saying,
he admitted that she was in another room on the telephone and
that he could only see her through a partially open door.   He
denied ever having spoken to Patrick herself.   As D.D.P.'s

                              14

plaintiff J.H. told his mother and Patrick that McGrew had fondled him when he delivered a note to McGrew's classroom. Patrick does not dispute that J.H. and his mother discussed the incident with her. Thus, we conclude that Patrick had notice as of the Spring of 1986 of an allegation that McGrew fondled J.H.

Given that Patrick had notice of an allegation of sexual abuse by McGrew, we next consider whether Plaintiffs have created a genuine issue of material fact as to whether Patrick acted with deliberate indifference when informed of J.H.'s allegations. The parties agree that upon hearing J.H.'s accusation, Patrick met with J.H., his mother, and McGrew to discuss the issue. Plaintiffs nevertheless contend that Patrick's failure to reprimand McGrew formally or to transfer him indicates that she was deliberately indifferent to the rights of J.H. We disagree.

---

statement that he was "pretty sure [Patrick] could have heard" him telling the women in the office about the incident is entirely speculative, it is not sufficient to raise a question of fact as to whether Patrick was aware of the incident. See Ruiz v. Whirlpool, Inc., 12 F.3d 510, 513 (5th Cir. 1994) ("Testimony based on conjecture or speculation is insufficient to raise an issue of fact to defeat a summary judgment motion . . . .").

Second, plaintiff W.J.H. testified that Patrick may have asked him whether McGrew had touched him, stating, "I think [Patrick] asked all of us, I think, but I can't remember though." However, W.J.H. stated that when Patrick asked him about McGrew, he denied that any improper touching had taken place. Assuming, for purposes of summary judgment, that Patrick did ask W.J.H. about any sexual abuse by McGrew, the fact that W.J.H. denied it indicates that this incident was not sufficient to put Patrick on notice of the abuse.

15

The deliberate indifference standard is a high one.  Actions and decisions by officials that are merely inept, erroneous, ineffective, or negligent do not amount to deliberate indifference and thus do not divest the official of qualified immunity.  In Taylor, we explained,

> We can foresee many good faith but ineffective responses that might satisfy a school official's obligation in these situations, e.g., warning the state actor, notifying the student's parents, or removing the student from the teacher's class.

Id. at 456 n.12.  This is just such a case.  Patrick testified that following her meeting with J.H., his mother, and McGrew, she determined that J.H.'s allegations were not true.  Nevertheless, she warned McGrew to examine his behavior closely and to ensure that he was not doing anything that could be misinterpreted by a child.

The fact that Patrick misread the situation and made a tragic error in judgment does not create a genuine issue of material fact as to whether she acted with deliberate indifference toward J.H.'s constitutional rights.  As Plaintiffs have failed to create a genuine issue of material fact as to (1) whether Patrick was aware of other allegations of abuse or (2) whether she acted with deliberate indifference toward J.H.'s constitutional rights upon being informed of his allegation, we conclude that Patrick was entitled to summary judgment in her favor on the issue of qualified immunity.

16

***B. Title IX***

Title IX provides in pertinent part that, "[n]o person . . . shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance."  20 U.S.C. § 1681(a).  Although its express means of enforcement is administrative, the Supreme Court has held that Title IX is also enforceable through an implied private right of action in which the injured party may seek money damages.  See Gebser v. Lago Vista Indep. Sch. Dist., 118 S. Ct. 1989, 1994 (1998) (citing Cannon v. University of Chicago, 441 U.S. 677 (1979) and Franklin v. Gwinnett County Pub. Schs., 503 U.S. 60 (1992)).

The district court dismissed Plaintiffs' Title IX claim, explaining that "[b]ecause the only basis of discrimination alleged by the plaintiffs is same-sex harassment, the plaintiffs have failed to state a claim under Title IX."  Plaintiffs argue that in light of the Supreme Court's recent decision in Oncale v. Sundowner Offshore Services, Inc., 118 S. Ct. 998 (1998), the district court erred in dismissing their Title IX claim pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief could be granted.

In Oncale, the Supreme Court explained that "nothing in Title VII [of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e to

17

2000e-17,] necessarily bars a claim of discrimination 'because of . . . sex' merely because the plaintiff and the defendant (or the person charged with acting on behalf of the defendant) are of the same sex." Id. at 1001-02. Plaintiffs now argue that because the district court's dismissal of their Title IX claim was based solely on this circuit's precedent indicating that same-sex sexual harassment was not actionable under Title VII, it must be reversed in light of Oncale.

Defendants concede that, in light of Oncale's holding, same-sex sexual harassment is actionable under Title IX as well as under Title VII. They argue, however, that we should nonetheless affirm the dismissal of Plaintiffs' Title IX claim because the court reached the right result, albeit for the wrong reason. Defendants therefore in essence suggest that because summary judgment was appropriate on Plaintiffs' § 1983 claims, which were based on the same facts as the Title IX claim, we may affirm the dismissal on that basis. We disagree.

A district court's dismissal of a case or a portion thereof for failure to state a claim upon which relief could be granted is not equivalent to a grant of summary judgment.

> The Rule 12(b)(6) motion . . . must be distinguished
> from a motion for summary judgment under Rule 56, which
> goes to the merits of the claim and is designed to test
> whether there is a genuine issue of material fact. The
> Rule 12(b)(6) motion, as has been mentioned above, only
> tests whether the claim has been adequately stated in
> the complaint.

18

5A CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE & PROCEDURE § 1356 (2d ed. 1990).  Neither Plaintiffs nor Defendants included evidence outside the pleadings in their briefs discussing the motion to dismiss, and the district court specifically noted that it was accepting all well-pleaded facts alleged by Plaintiffs as true.

While we have determined that the evidence presented by Plaintiffs in opposition to Defendants' motion for summary judgment on the § 1983 claims failed to create a genuine issue of material fact, we cannot say that as to the Title IX claim the facts pled in the complaint, when taken as true, fail to state a claim upon which relief could be granted.[8]  Therefore, we

---

[8]      Moreover, we note that, although they are similar, the standards for school district liability under § 1983 and under Title IX are not identical.  In order to prevail against a school district under Title IX, a plaintiff must demonstrate that "an official who at a minimum has authority to address the alleged discrimination and to institute corrective measures on the [school district's] behalf ha[d] actual knowledge of discrimination . . . and fail[ed] adequately to respond." Gebser, 118 S. Ct. at 1999.  In order to prevail against the same district under § 1983, however, the plaintiff must demonstrate that "(1) the enforcement of a municipal policy or custom was (2) 'the moving force' of the violation of federally protected rights."  1B SCHWARTZ & KIRKLIN, supra, § 7.6 (quoting City of Canton v. Harris, 489 U.S. 378, 385-91 (1989)).  Plaintiffs have not had occasion to put forth evidence in support of their Title IX claim, and they must be given an opportunity to do so.  See Millar v. Houghton, 115 F.3d 348, 350 (5th Cir. 1997) ("Under Fed. R. Civ. P. 56(c), a party must be served with a motion for summary judgment at least 10 days before a court grants the motion against him.  Similarly, a party must be given at least 10 days notice before a court grants summary judgment sua sponte. This requirement places a party on notice that he is in jeopardy of having his case dismissed and affords him the opportunity to put forth evidence to show precisely how he intends to prove his

19

conclude that the district court's judgment dismissing Plaintiffs' Title IX claim must be reversed and the case must be remanded to the district court for further proceedings consistent with this opinion.

## IV.  CONCLUSION

For the foregoing reasons, we AFFIRM the district court's grant of summary judgment in favor of DISD on Plaintiffs' § 1983 claim and its grant of summary judgment on the issue of Patrick's entitlement to qualified immunity; we REVERSE the district court's dismissal of Plaintiffs' Title IX claim; and we REMAND the case to the district court for further proceedings consistent with this opinion.  Each party shall bear its own costs.

---

case at trial." (footnotes omitted)).

In remanding this case for further proceedings, we in no way intend to suggest that summary judgment would be inappropriate if Defendants are able to demonstrate, as they did with respect to Plaintiffs' § 1983 claims, that no genuine issue of material fact exists with respect to Plaintiffs' Title IX claim.  Indeed, given the factual development that took place in this case with respect to the § 1983 claims against DISD and Patrick, we can say that if Plaintiffs can produce no additional evidence, Defendants will be entitled to summary judgment on the Title IX claim.