# United States Court of Appeals for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

December 18, 2020

Lyle W. Cayce
Clerk

No. 20-40152

United States of America,

*Plaintiff—Appellee*,

*versus*

Reynaldo Mata, Jr.,

*Defendant—Appellant*.

Appeal from the United States District Court
for the Southern District of Texas
USDC No. 2:19-CR-1160

Before Owen, *Chief Judge*, and King and Engelhardt, *Circuit Judges*.
Per Curiam:[*]

Defendant-appellant Reynaldo Mata, Jr. was convicted of transporting illegal aliens within the United States in violation of 8 U.S.C. § 1324(a)(1)(A)(ii), (v)(II), and (B)(ii). Mata appeals his conviction and argues that there was insufficient evidence to support the jury's verdict, that the district court erred in admitting allegedly speculative testimony, and that

---

[*] Pursuant to 5th Circuit Rule 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5th Circuit Rule 47.5.4.

No. 20-40152

the district court abused its discretion by instructing the jury on deliberate ignorance. We AFFIRM.

## I.

Reynaldo Mata, Jr. was charged in a two-count indictment with transporting two aliens in violation of 8 U.S.C. § 1324(a)(1)(A)(ii), (v)(II), and (B)(ii). Following a two-day jury trial, Mata was convicted on both counts. Mata was sentenced to twenty-four months in the custody of the Bureau of Prisons and a two-year term of supervised release.

### A. Evidence at Trial

On July 2, 2019, Border Patrol Agent Robert Hankins was working with his K-9, Kofi, at the Javier Vega Checkpoint in Sarita, Texas. At around 6:45 a.m., Kofi alerted to an F-150 truck hauling a black utility trailer. Mata was driving the truck. At trial, Hankins explained that this was at the end of a shift and described shift changes as the "peak" time for alien smuggling.

In response to questioning by agents, Mata stated that he was coming from the south side of Harlingen and on his way to Corpus Christi. Mata repeatedly told agents that the trailer belonged to a friend and that he was hauling furniture. Mata said he had not loaded the furniture himself and had not been inside the trailer. When asked how he knew that furniture was in the trailer, Mata responded that he did not. After Kofi alerted to the trailer for a second time, an agent opened the unlocked trailer door and found nine people inside. Each was in the country illegally. Mata was then arrested.

Orlando Alba-Diaz—one of the aliens discovered in the trailer—subsequently testified at Mata's trial. Alba-Diaz testified that he is a citizen of Mexico and had arranged to be smuggled into the United States for $7,500. He was smuggled across the border and eventually ended up at a mobile home, where he stayed three nights. At around 4:00 or 5:00 a.m. on July 2,

No. 20-40152

Alba-Diaz and eight other individuals were loaded into a trailer that had been backed up to the mobile home. They were loaded in by a person who instructed them not to "make any noises" or "move around too much."

Alba-Diaz further testified that, after he was loaded into the trailer, he heard the following:

> The person that got us into the trailer made a call. You could hear a telephone ringing not too far away from right there. You could hear that somebody had picked it up. And he said the trailer was ready.

Alba-Diaz was asked, "who do you think the person [was] that answered the phone call?" Defense counsel objected on the basis of speculation and was overruled. Alba-Diaz responded that he thought the person who answered the phone call was the driver of the truck. Alba-Diaz further testified that the caller stated that "the trailer was already ready" and the "driver" answered that "he was already ready and that he was already there. And [the driver] came close by and he set up the truck to hook it up." Next, Alba-Diaz testified that "[t]he person that got us into the trailer asked are you sure that you want to take the risk?" The driver reportedly answered: "Yes. I am going to take the risk. And that's when he started driving."

On cross-examination, Alba-Diaz admitted that, although he believed Mata had been the recipient of the call, he did not know that for a fact.[1] He made clear that he never talked to Mata on the day he was loaded onto the trailer and never made arrangements with him. He never saw Mata until he

---

[1] Mata's cell phone data shows that he had several incoming and outgoing phone calls from 4:08 through 6:18 a.m. on July 2, 2019. However, the Government did not introduce evidence to identify the callers or recipients of these calls.

No. 20-40152

was taken out of the trailer by agents.[2]

Alba-Diaz further testified that the trip to the checkpoint took around an hour and 45 minutes. However, Agent Carciaga testified that the drive from Harlingen to the checkpoint typically takes 30 minutes. According to Alba-Diaz, the truck made only routine stops while driving. He stated that the truck door was never opened or closed during those short stops.

Alexander Perez-Simon—another alien in the trailer—also testified at the trial. A friend had arranged for him to travel from Guatemala to Mexico and to be smuggled into the United Sates for a $10,000 fee to be paid after he arrived in the country. He also testified that he was loaded into the trailer at around 4:30 or 5:00 a.m. Perez-Simon stated that he did not hear any voices outside the trailer and was "hardly paying attention to anything from the outside." He did testify, however, that he heard the sounds of "chains that were hooked up to the pickup" after he was loaded into the trailer, but contended that the trailer was already hooked up to the truck when he was loaded inside. According to Perez-Simon, it took about ten minutes "for the trailer to take off," and it took about an hour and a half to get to the checkpoint. He stated that he never saw or met the driver of the truck prior to being arrested.

**B. Jury Charge**

Defense counsel objected to the deliberate ignorance instruction that was included in the court's jury instructions, arguing that the charge improperly reduced the burden of proof. The district court overruled the objection.

---

[2] On the day of Mata's arrest, Border Patrol agents showed Alba-Diaz two "six-pack" photo lineups, and he identified someone other than Mata as the driver of the truck.

## II.

First, the district court's evidentiary rulings are reviewed for abuse of discretion. *United States v. Kinchen*, 729 F.3d 466, 470 (5th Cir. 2013). "A trial court abuses its discretion when its ruling is based on an erroneous view of the law or a clearly erroneous assessment of the evidence." *United States v. Ragsdale*, 426 F.3d 765, 774 (5th Cir. 2005) (citation omitted). "If we find an error in the admission or exclusion of evidence, we review for harmless error." *United States v. Sumlin*, 489 F.3d 683, 688 (5th Cir. 2007). "Any error . . . that does not affect substantial rights must be disregarded." *Id.* (quoting FED. R. CRIM. P. 52(a)).

Next, where, as in this case, a defendant preserves his challenge to a verdict, we review the conviction de novo. *United States v. Suarez*, 879 F.3d 626, 634 (5th Cir. 2018). "On a sufficiency-of-the-evidence challenge, however, de novo review permits us to evaluate only the reasonableness of the jury's verdict, and not whether we believe that verdict was correct." *Id.* Indeed, we review Mata's claims "with substantial deference to the jury verdict" and affirm "if a reasonable trier of fact could conclude . . . the elements of the offense were established beyond a reasonable doubt." *Id.* at 630 (citations omitted). In so doing, we view all evidence "in the light most favorable to the government and all reasonable inferences made in support of the verdict." *United States v. Lanier*, 879 F.3d 141, 145–46 (5th Cir. 2018) (citation omitted). Moreover, we must accept "all credibility choices and reasonable inferences made by the trier of fact which tend to support the verdict" and "any conflict in the evidence must be resolved in favor of the jury's verdict." *United States v. Moreno–Gonzalez*, 662 F.3d 369, 372 (5th Cir. 2011) (citation omitted); *see also United States v. Robinson*, 700 F.2d 205, 209 (5th Cir. 1983) ("The jury [is] entitled to credit [one witness's] testimony over that of other witnesses."). As such, we have held that "[a] defendant seeking reversal on the basis of insufficient evidence swims upstream."

*United States v. De Nieto*, 922 F.3d 669, 677 (5th Cir. 2019) (quoting *United States v. Mulderig*, 120 F.3d 534, 546 (5th Cir. 1997)).

Finally, "[w]hen a challenge to jury instructions is properly preserved for appeal, we review the challenged instructions for abuse of discretion." *United States v. Daniels*, 281 F.3d 168, 183 (5th Cir. 2002). Where the defendant argues that a jury instruction was inappropriate, "we consider whether the charge was both legally accurate and supported by fact." *United States v. Demmitt*, 706 F.3d 665, 675 (5th Cir. 2013) (citing *United States v. Mendoza-Medina*, 346 F.3d 121, 132 (5th Cir. 2003)). "In deciding whether the evidence reasonably supports the jury charge, the court 'reviews the evidence and all reasonable inferences that may be drawn therefrom in the light most favorable to the government.'" *United States v. Newell*, 315 F.3d 510, 529 (5th Cir. 2002) (quoting *United States v. Wise*, 221 F.3d 140, 147 (5th Cir. 2000)).

## III.

On appeal, Mata challenges the admission of Alba-Diaz's testimony regarding the recipient of the phone call, the sufficiency of evidence supporting his conviction, and the inclusion of the deliberate ignorance instruction in the district court's jury instructions. We address each argument in turn.

### A. Admission of Alba-Diaz's Testimony

Mata argues that the district court abused its discretion by admitting Alba-Diaz's testimony identifying the recipient of the phone call as "the driver" because Alba-Diaz was confined in the trailer and had no basis for such an identification. Mata contends that the testimony was speculation and inadmissible under Federal Rule of Evidence 602.

Rule 602 dictates that a "witness may testify to a matter only if

evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter." FED. R. EVID. 602. Critically, "[p]ersonal knowledge can include inferences and opinions, so long as they are grounded in personal observation and experience." *United States v. Cantu*, 167 F.3d 198, 204 (5th Cir. 1999) (quoting *United States v. Neal*, 36 F.3d 1190, 1206 (1st Cir. 1994), *cert. denied*, 519 U.S. 1012 (1996)). The question therefore is whether Alba-Diaz's inference regarding the call recipient's role in the smuggling operation was "grounded in [his] personal observation and experience." *Id.* We conclude that it was.

In *United States v. Cantu*, we considered whether a district court erred in allowing a witness to testify as to the working relationship between two men based only on her observations of the two. *Id.* Specifically, the witness testified that she believed one of the men was the other's boss because she had "personally observed [him] giving [the other] orders while they were unloading and storing marijuana in her house." *Id.* We reasoned that the mere fact that "her testimony consisted of a conclusion about the relationship between [the two], rather than a simple description of a concrete fact" did not render it inadmissible. *Id.* Her testimony remained "grounded in her personal observations of the interaction of the[] two men" and was thus admissible. *Id.* Similarly, in this case, Alba-Diaz made a reasonable inference based on the conversation he heard between two individuals and the sequence of events he experienced. According to Alba-Diaz, the call was made immediately after the trailer was loaded. The call-recipient answered that he was "ready." The person who loaded the trailer asked "are you sure that you want to take the risk," to which the call-recipient answered: "Yes. I am going to take the risk." Alba-Diaz testified that it was after that statement that the drive began. As in *Cantu*, Alba-Diaz reasonably inferred the role that the call-recipient was playing in the operation—driver—based on his

No. 20-40152

personal observations.[3]

Accordingly, the district court did not abuse its discretion in permitting Alba-Diaz to testify that the recipient of the call was the driver of the truck.

## B. Sufficiency of Evidence

Mata contends that the evidence in this case was insufficient to prove the elements of 8 U.S.C. § 1324(a)(1)(A)(ii) beyond a reasonable doubt. To establish a violation of § 1324(a)(1)(A)(ii), the Government must prove that (1) an alien "entered or remained in the United States in violation of the law;" (2) that "the defendant knew or recklessly disregarded the fact that said alien was in the United States in violation of the law;" and (3) that "the defendant transported or attempted to transport said alien, within the United States with the intent to further the alien's unlawful presence." *United States v. Sheridan*, 838 F.3d 671, 672 (5th Cir. 2016). "A jury's finding that a defendant 'knew or recklessly disregarded the fact that [an] alien was in the United States in violation of the law' requires the jury to find that the defendant knows that a person, who is an alien, exists." *Id.* at 673. Mata argues that the Government's evidence was insufficient to prove that he knew of the aliens' presence in the trailer, had the requisite mens rea of the aliens' illegal status, or acted willfully in furtherance of their violation of the law.

We note from the outset that knowledge may be—and often must be—shown by circumstantial evidence. *See United States v. Statin*, 367 F. App'x 492, 496 (5th Cir. 2020); *see also Staples v. United States*, 511 U.S. 600,

---

[3] By contrast, in the Fifth Circuit case relied on by Mata on this issue, the witness testified as to what someone else had heard—a conclusion that was "entirely speculative." *Doe on Behalf of Doe v. Dallas Indep. Sch. Dist.*, 153 F.3d 211, 218 n.7 (5th Cir. 1998).

615 n.11 (1994) (explaining that "knowledge can be inferred from circumstantial evidence"). Indeed, "[c]ircumstantial evidence alone can establish a defendant's knowledge or reckless disregard that the [aliens] are illegally in the country." *United States v. De Jesus-Batres*, 410 F.3d 154, 161 (5th Cir. 2005) (discussing identical knowledge requirement in 8 U.S.C. § 1324(a)(1)(A)(iii)). Accordingly, we may consider circumstantial evidence that supports Mata's knowledge of the aliens' presence in the trailer. *See, e.g.*, *United States v. Campos*, 354 F. App'x 97, 98 (5th Cir. 2009) (finding sufficient knowledge because a guide took the alien to a "particular gas station," knew that the alien could be hidden inside the defendant's truck, and the defendant "left [his] vehicle unlocked and returned outside shortly after the alien was secured in the vehicle").

For example, in *United States v. Durant*, we found sufficient evidence that a driver knew illegal aliens were in her trailer based on the facts that she was "the sole driver and occupant of the truck in the trailer of which the 20 illegal aliens were discovered," took a longer than expected route, made particular statements regarding the trip, and at least two of the aliens had agreed to pay between $1,000 and $1,200 for the trip. 167 F. App'x 369, 370 (5th Cir. 2006). As in *Durant*, "the jury could have reasonably inferred that [Mata] would not have been entrusted with such a valuable cargo if [he] had not been knowledgeable and involved in the alien-smuggling scheme." *Id.* Moreover, contrary to Mata's contention on appeal, the Government's evidence "was not limited to the value of the contraband alone." *United States v. Rojas Alvarez*, 451 F.3d 320, 335 (5th Cir. 2006). The extended length of the trip—compared to the expected length—further supports his knowledge. *See, e.g.*, *United States v. Pennington*, 20 F.3d 593, 598 (5th Cir. 1994); *Durant*, 167 F. App'x at 370. In addition, the jury could have "reasonably inferred" that Mata was "referring to the illegal aliens" when he agreed to take the "risk" of hauling the trailer. *Durant*, 167 F. App'x at

370.[4] At bottom, "[t]he jury was free to choose among reasonable constructions of the evidence." *Pennington*, 20 F.3d at 598–99.

Moreover, the evidence also established that Mata knew—or at least recklessly disregarded—that the aliens were in the country illegally. *See* 8 U.S.C. § 1324(a)(1)(A)(ii). None of the aliens rode in the truck—all were hidden in a windowless trailer and riding in complete silence. Mata attempted to transport the concealed individuals through a border checkpoint at a time known for smuggling. Such evidence is sufficient to establish this element of the conviction. *See, e.g.*, *United States v. Romero-Cruz*, 201 F.3d 374, 379 (5th Cir. 2000) (considering in part that aliens were picked up by defendant in an area "known for alien smuggling" and "were clearly in transit and attempting to hide" to establish knowledge of illegal status); *United States v. Lira-Villareal*, 102 F. App'x 406, 409–10 (5th Cir. 2004) (similarly considering as "indicia of the aliens' illegal presence establishing [the defendant's] knowledge" that the aliens hid from view).

With regard to the final element of § 1324(a)(1)(A)(ii)—willful furtherance of the alien's violation of the law—the jury is required to find a "direct and substantial relationship between that transportation and its furtherance of the alien's presence in the United States." *Lira-Villareal*, 102 F. App'x at 410. This element must be considered "'under the totality of the circumstances and after evaluating all of the evidence,' including taking proper consideration of 'the mode of transportation used, the time of travel,

---

[4] Mata argues that "a rational juror could not know as a matter of fact that Mr. Mata was the person speaking on the phone." However, as discussed *supra*, Alba-Diaz reasonably inferred that the call-recipient was the driver of the vehicle. Mata was driving the vehicle when it was stopped at the checkpoint and both aliens testified that the truck only made routine stops before the checkpoint. Neither heard the truck door open and close during any of the stops. Thus, the inference that Mata made the statements was not unreasonable.

the route chosen, . . . and the distance from the border at the time of apprehension.'" *Id.* (quoting *United States v. Merkt*, 764 F.2d 266, 272 (5th Cir. 1985)). Indeed, we have previously considered that the defendant "was found to be transporting illegal aliens . . . further into the United States and away from Border Patrol checkpoints, in a locale known for its alien smuggling" and took a longer route than necessary. *Id.* at 411. In this case, Mata was found to be attempting to drive aliens away from the border while they were hidden in a trailer—passing through a Border Patrol checkpoint at an hour described as a peak time for smuggling. In addition, the testimony reflected that the route Mata took was approximately an hour longer than expected. Based on the foregoing, this evidence was sufficient for the jury to conclude that Mata knowingly transported illegal aliens in furtherance of their violation of the law.

Accordingly, viewing all evidence in the light most favorable to the Government and making all reasonable inferences in support of the verdict, we conclude that the evidence was sufficient to sustain the jury's verdict.

## C. Deliberate Ignorance Instruction

Mata contends that the district court erred in giving the jury a deliberate ignorance instruction because the Government "proceeded on a theory of actual knowledge" and the evidence presented a binary choice— either Mata knew of the aliens or did not. The deliberate ignorance instruction is appropriate "where a defendant 'claims a lack of guilty knowledge and the proof at trial supports an inference of deliberate indifference.'" *United States v. Kuhrt*, 788 F.3d 403, 417 (5th Cir. 2015) (quoting *United States v. Brooks*, 681 F.3d 678, 701 (5th Cir. 2012)). Accordingly, the evidence at trial "must raise two inferences: (1) the defendant was subjectively aware of a high probability of the existence of the illegal conduct; and (2) the defendant purposefully contrived to avoid

learning of the illegal conduct." *Mendoza-Medina*, 346 F.3d at 132–33; *see also United States v. Saucedo-Munoz*, 307 F.3d 344, 348 (5th Cir. 2002) ("A defendant's contrivance to avoid learning the existence of illegal conduct may be established by direct or circumstantial evidence."). Conversely, "[i]t is improper for a district court to instruct a jury on deliberate ignorance 'when the evidence raises only the inferences that the defendant had actual knowledge or no knowledge at all of the facts in question.'" *Demmitt*, 706 F.3d at 675 (quoting *Mendoza-Medina*, 346 F.3d at 134).

We have also expressly held, however, that a deliberate ignorance instruction may still be proper even where the Government's "primary theory was that [the defendant] had actual knowledge" if the evidence also "suggests a conscious attempt to avoid incriminating knowledge." *United States v. Orji-Nwosu*, 549 F.3d 1005, 1009 (5th Cir. 2008); *see also Kuhrt*, 788 F.3d at 417 (explaining that the instruction should not be used as "a backup or supplement in a case that hinges on a defendant's actual knowledge" and is appropriate only where evidence supports the instruction).[5] Accordingly, though the Government's primary theory in this case appeared to be that Mata had actual knowledge, the question remains whether the evidence at trial raised the two inferences discussed above: (1) Mata was subjectively aware of a high probability of the existence of illegal conduct, and (2) he purposely contrived to avoid learning of the illegal conduct. *Oti*, 872 F.3d at 697.

Regarding the first inference, the same evidence that supports that

---

[5] Mata relies on our explanation in *United States v. Oti* that, "[w]here the government relies on evidence of actual knowledge, the deliberate ignorance instruction is not appropriate." 872 F.3d 678, 697–98 (5th Cir. 2017). However, in *Oti*, we nevertheless conducted the basic inquiry of whether "the evidence raises only the inferences that the defendant had actual knowledge or no knowledge at all of the facts in question." *Id.* at 697 (quoting *Mendoza-Medina*, 346 F.3d at 133–34).

"the defendant had actual knowledge of the illegal conduct" may also "raise the inference that the defendant was subjectively aware of a high probability of the existence of illegal conduct." *United States v. Lara-Velasquez*, 919 F.2d 946, 952 (5th Cir. 1990). As discussed *supra*, Alba-Diaz testified that the driver, in conversation with the individual who loaded the trailer, agreed to accept a "risk" in driving this trailer. This evidence does not necessarily present a binary choice between Mata's actual knowledge or lack of knowledge. *See id.* at 951. The evidence that Mata, as the driver of the truck, was aware of a "risk" in accepting the job could also establish that he was "subjectively aware of a high probability of the existence of . . . illegal conduct." *Id.*

Moving to the second inference, a deliberate ignorance instruction is appropriate if the circumstances of the case "were so overwhelmingly suspicious that the defendants' failure to conduct further inspection or inquiry suggests a conscious effort to avoid incriminating knowledge." *United States v. Nguyen*, 493 F.3d 613, 621 (5th Cir. 2007) (citation omitted); *see also id.* at 622 ("Not asking questions can be considered a purposeful contrivance to avoid guilty knowledge."). In this case, we find that "the circumstances of the defendant's involvement in the criminal offense [were] *so overwhelmingly suspicious*" that the "failure to question the suspicious circumstances" or conduct further inspections "establishes the defendant's purposeful contrivance to avoid guilty knowledge." *Lara-Velasquez*, 919 F.2d at 952. Mata agreed to transport a loaded trailer through a Border Patrol checkpoint in the early morning hours. Mata was informed of a "risk" associated with hauling the trailer but did not inspect the trailer and asked no questions about the trailer of the individual who loaded it. The evidence thus supports that Mata "*consciously* attempted to escape confirmation of conditions or events he strongly suspected to exist." *United States v. Lee*, 966 F.3d 310, 326 (5th Cir. 2020) (quoting *Mendoza-Medina*, 346 F.3d at 133).

No. 20-40152

We thus find that the district court did not abuse its discretion by instructing the jury on deliberate ignorance.

**IV.**

Based on the foregoing, we AFFIRM Mata's conviction, the district court's admission of Alba-Diaz's testimony, and the district court's deliberate ignorance instruction.